**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BOSE CORPORATION, | |
| Plaintiff, | |
| v. | Case No. 1:26-cv-00011 |
| THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A, | Judge Mary M. Rowland |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bose Corporation ("Bose") brings an action for violations of the Lanham Act, 15 U.S.C. § 1114, *et seq.* and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS § 510, *et seq.* by various Defendants. Bose has moved for a preliminary injunction [24]. Defendants Zippercase ("Zippercase") and MusicMate2015 ("MusicMate") (together, the "Opposing Defendants") oppose the preliminary injunction. [28] [29].

For the reasons explained below, Bose's motion for a preliminary injunction [24] is granted with respect to the Opposing Defendants.

## I. Background

The facts herein are taken from Bose's Complaint [1] [2], motion for entry of a temporary restraining order [12] [13], motion for preliminary injunction [24], reply brief [51], the Opposing Defendants' opposition briefs [28] [29], supplemental declaration [58], and the exhibits, declarations, and attachments accompanying those filings. The Court makes "factual determinations on the basis of a fair interpretation

1

of the evidence before the court." *Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir. 1986). Yet these findings are preliminary and "do not bind the district court as the case progresses." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011).

Bose manufactures and sells a variety of audio equipment, including headphones, earbuds, portable speakers, surround sound speakers, home theater systems, loudspeaker systems, and headset equipment, along with merchandise related to the Bose brand (collectively, the "Bose Products"). [13-1] ¶ 5. Bose is the owner and rights holder of several federally registered trademarks (collectively, the "Bose Trademarks"), including "Bose" and "A20", and maintains the exclusive rights to develop, manufacture, distribute, license, promote, offer for sale, and sell the Bose Products in connection with its Bose Trademarks. *Id*. ¶¶ 6–7.

MusicMate is a Shanghai based online retailer that sells products under the brand name "Voarmaks." [28-1] ¶¶ 3–4. MusicMate offers ear pads cushions for sale on Amazon, some of which reference "Bose" or "A20" in their product listing titles (the "MusicMate Products"). [13-4] at 14–16. Below is a screenshot of a MusicMate Product as it appeared on MusicMate's Amazon storefront on August 19, 2025:

2



*Id.* at 15. MusicMate maintains that it uses "A20" and "Bose" only to describe the MusicMate Products' compatibility with Bose headphones, particularly the "Bose A20 Aviation Headset." [28-1] ¶¶ 6, 9.

Zippercase is a Hong Kong based online retailer that sells products under the brand name "Getgear." [29-1] ¶¶ 3–4. Zippercase offers protective cases for speakers for sale on Amazon, some of which reference "Bose" in their product listing titles (the "Zippercase Products"). [13-4] at 17–20. Below is a screenshot of a Zippercase Product as it appeared on Zippercase's Amazon storefront on September 9, 2025:



*Id.* at 18. Zippercase maintains that it uses "Bose" only to describe the Zippercase Products' compatibility with Bose speakers, particularly the "Bose SoundLink Micro Bluetooth Speaker." [29-1] ¶¶ 6, 9.

On January 5, 2026, Bose filed this action alleging, among other things, that Zippercase, MusicMate, and other Defendants used the Bose Trademarks in commerce without authorization. [1] ¶¶ 46–56. On January 23, 2026, Bose moved *ex parte* for a temporary restraining order ("TRO") [12] [13], which this Court granted on January 26, 2026. [17].

On February 18, 2026, Bose moved to convert the TRO into a preliminary injunction [24], which this Court granted only as to non-responding Defendants on March 10, 2026. [37].

## II.    Legal Standard

"To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). Once the plaintiff has made this showing, the Court balances "the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Id.* The balancing test is a sliding scale: "[i]f the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). The Court also considers the public interest in deciding whether to grant an injunction. *Life Spine*, 8 F.4th at 539.

### III.   Analysis

The Opposing Defendants contend that Bose has failed to satisfy any of the requirements for a preliminary injunction. For the reasons below, the Court disagrees.

#### A. Likelihood of Success on the Merits

To prevail on a trademark infringement claim[1] under the Lanham Act, a plaintiff must establish that (1) it has a protectable trademark; (2) the defendant is not authorized to use the mark; and (3) the defendant's use of the challenged mark is

---

[1]Bose also brings false designation of origin and IUDTPA claims against the Opposing Defendant. Because, however, a preliminary injunction only requires a likelihood of success at least one claim, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008), the Court does not reach the merits of those claims.

likely to cause confusion among consumers. *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 11940344, at \*1 (N.D. Ill. Sept. 6, 2016).

The first and second elements are satisfied. The registration of the Bose Trademarks is *prima facie* evidence of their validity and Bose has not authorized the Opposing Defendants to use the Bose Trademarks. [13-1] ¶¶ 6, 13; *Walgreen Co. v. Walgreen Health Sols., LLC*, No. 23 CV 17067, 2024 WL 4278101, at \*4 (N.D. Ill. Sept. 24, 2024). The Opposing Defendants do not contest either of these elements.

The third element is also satisfied. The Seventh Circuit employs a seven factor test[2] to determine whether consumers are likely to be confused: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No single factor is dispositive. *Id.* Courts may assign varying weight to each of the factors depending

---

[2]The Court recognizes that where, like here, a defense of nominative fair use is raised, application of the traditional multi-factor test for likelihood of confusion is difficult because often many factors "are either unworkable or not suited or helpful as indicators of confusion in this context." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012) (citing *Century 21 Real Estate Corp. v. Lendingtree, Inc.,* 425 F.3d 211, 224 (3d Cir.2005)). For example, similarity of the marks will almost always suggest consumer confusion "because, by definition, nominative use involves the use of *another's* trademark in order to describe the trademark owner's *own* product." *Id.* (quoting *Century 21*, 425 F.3d at 224) (emphasis in the original). Without any guidance from the Seventh Circuit, however, this Court is hesitant to depart from the standard seven factor test and therefore will not do so.

on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important. *Id.*

The first factor asks whether "the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id.* at 930 (citation omitted). "The court should therefore 'consider whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product.'" *Id.* (quoting *Nike, Inc. v. "Just Did It" Enters.,* 6 F.3d 1225, 1228–29 (7th Cir.1993). The Court finds that a reasonable customer would affiliate the MusicMate and Zippercase Products with Bose. In the challenged Amazon listing titles[3], the "Bose" and "A20" marks appear as nouns at the leading position of each title. [13-4] at 14–20. Because consumers ordinarily read the leading noun in a product title as the brand of the item being sold, a consumer encountering these listings would understand Bose to be affiliated with the MusicMate and Zippercase Products. This factor therefore favors Bose.

The second factor asks whether the parties' products "are the kind the public might very well attribute to a single source (the plaintiff)." *AutoZone,* 543 F.3d at 931

---

[3]MusicMate emphasizes that it never submitted "A20" to Amazon as the leading noun for its product listing titles and instead submitted "Voarmaks." [58] ¶¶ 4–8. MusicMate explains that Amazon dynamically added "A20" to its listing titles. *Id.* ¶ 7. This may be true. But it is unclear why it matters. "Likelihood of confusion is evaluated in light of what occurs in the marketplace and from a consumers' perspective." *Am. Taxi Dispatch v. Am. Metro Taxi & Limo Co.*, No. 07 C 2602, 2007 WL 9815908, at *6 (N.D. Ill. Dec. 10, 2007) (citation omitted). From a consumer's perspective, they see the title displayed on Amazon, not the title MusicMate submitted.

(citation omitted). The MusicMate and Zippercase Products relate to speakers and headphones. [28-1] ¶¶ 3–6; [29-1] ¶¶ 3–6. Bose sells speakers and headphones. [13-1] ¶ 5. A reasonable consumer, therefore, may believe that Bose produced the MusicMate and Zippercase Products. This factor too favors Bose.

The third factor asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *AutoZone*, 543 F.3d at 932 (citation omitted). The Opposing Defendants sell the MusicMate and Zippercase Products online. [28-1] ¶ 6; [29-1] ¶ 6. Bose sells the Bose Products online and through authorized retailers. [13-1] ¶ 8. Thus, both parties target the same customer base: people looking to purchase products related to speakers and headphones online. The third factor favors Bose.

As to the fourth factor "[t]he more widely accessible and inexpensive the products ... the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (citation omitted). The MusicMate and Zippercase Products are widely accessible for anyone to purchase on Amazon and are sold for less than $25. [51-2]. This factor also favors Bose.

For the fifth factor, "[t]he stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933 (citation omitted). Bose is globally recognized brand that spends over ten million dollars annually marketing and promoting Bose Products that bear the Bose Trademarks. [13-1] ¶¶ 4, 8, 9, 10. This factor too favors Bose.

The sixth factor asks whether there is any evidence of actual consumer confusion. The Opposing Defendants point to evidence that consumers are not confused. [28-1] ¶ 11; [28-5]; [29-1] ¶ 11; [29-5]. That evidence, however, is only truly persuasive as to MusicMate, where it demonstrates consumer awareness that the MusicMate Products do not originate from the "OEM" or "manufacturer" (*i.e.*, Bose). [28-5]. Bose, on the other hand, points to evidence that consumers are confused with respect to the Zippercase Product. [51-1] ¶ 5. This factor thus weighs in MusicMate's favor, but not in Zippercase's.

The seventh factor asks whether the defendant attempted to pass off its product as having come from the plaintiff. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 731 (7th Cir. 2015). Passing off is a type of fraud in which the defendant "tr[ies] to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986). Though the Opposing Defendants admit they use the Bose Trademarks to describe their products' compatibility with certain Bose Products, the Court cannot say that this, standing alone, rises to the level of an intent to deceive consumers into believing Bose is the seller of their products. As Bose presents no other evidence of intent, the Court will not consider this factor. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992) ("[a] defendant's intent is relevant to the issue of likelihood of confusion only if he intended to palm off his products as those of another, thereby profiting from confusion.") (quotations omitted).

In sum, with respect to MusicMate, only one factor, actual confusion, weighs in its favor, whereas five factors weigh in Bose's favor. With respect to Zippercase, six factors weigh in Bose's favor and no factor weighs in Zippercase's favor. On balance, therefore, the Court finds that Bose has shown a likelihood of success on its ability to demonstrate a likelihood of confusion for the Opposing Defendants' use of the Bose Trademarks in their product title listings.

The Opposing Defendants nevertheless maintain that Bose cannot show a likelihood of success because the doctrines of "descriptive fair use" and "nominative fair use" bar Bose's trademark infringement claims. [28] at 4; [29] at 4. Both doctrines are affirmative defenses. *MacNeil IP LLC v. Harbor Freight Tools USA Inc.*, No. 24-CV-03767, 2026 WL 800160, at *4 (N.D. Ill. Mar. 23, 2026); *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, No. 20-CV-7404, 2021 WL 5833986, at *3 (N.D. Ill. Dec. 9, 2021) (J. Rowland).[4] This means that to defeat Bose's

---

[4]Most judges in this district treat nominative fair use as an affirmative defense. *Slep-Tone Ent. Corp. v. Coyne,* 41 F. Supp. 3d 707, 717 (N.D. Ill. 2014) (J. Feinerman); *Milwaukee Elec. Tool Corp. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 24 C 12487, 2025 WL 1677503, at *4 (N.D. Ill. June 13, 2025) (J. Kocoras); *Societe pour L'oeuvre et la Memoire d'Antoine de Saint Exupery - Succession de Saint Exupery-d'Agay v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A*, No. 25 C 579, 2025 WL 2821312, at *3 (N.D. Ill. Oct. 3, 2025) (J. Durkin); *KTM AG v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 24-CV-03278, 2025 WL 965130, at *2 (N.D. Ill. Mar. 31, 2025) (J. Valderrama). It appears only one judge has found otherwise. *Data Mgmt. Ass'n Int'l v. Enter. Warehousing Sols., Inc.,* No. 20 C 04711, 2020 WL 7698368, at *2 (N.D. Ill. Dec. 28, 2020) (J. Tharp) (adopting the Ninth Circuit's approach of replacing the familiar "likelihood of consumer confusion" analysis with a distinct three-factor test on which the plaintiff bears the burden). Without any binding authority from the Seventh

request for a preliminary injunction based on such defenses, it is the Opposing Defendants—not Bose—who bear the burden of showing likelihood of success on those defenses. *Anderson v. Larry*, No. 21-CV-944, 2021 WL 4745390, at \*15 (N.D. Ill. Oct. 12, 2021); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("the burdens at the preliminary injunction stage track the burdens at trial.").

The Opposing Defendants have not met their burden. As to descriptive fair use, the Opposing Defendants have not shown that they utilize the Bose Trademarks in a non-trademark manner. To the contrary, the Opposing Defendants use the Bose Trademarks as source indicators by, at a minimum, positioning the marks as leading nouns in their products title listings. [13-4] at 14–20. Descriptive fair use is not available if the descriptive use is, in fact, a trademark use. *Sorensen*, 792 F.3d at 722. Additionally, the Opposing Defendants concede that the purpose of utilizing the Bose Trademarks is to inform potential customers that the MusicMate and Zippercase Products are compatible with certain Bose Products. Courts have found that such a use does not fall under the doctrine of descriptive fair use. *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1369 (M.D. Fla. 2012) (finding descriptive fair use inapplicable where "the purpose of utilizing various Ford word marks such as MUSTANG was to inform potential customers that OEW wheels were compatible with specific Ford products."); *Games Workshop Ltd. v. Chapterhouse*

---

Circuit, this Court, like it did in *Tireboots*, adopts the majority approach in this district and treats nominative fair use as an affirmative defense.

*Studios, LLC*, No. 10 C 8103, 2013 WL 12618756, at \*2 (N.D. Ill. Dec. 5, 2013) (noting that "nominative fair use" is the appropriate doctrine where a defendant "market[s] certain of its products as compatible with or to be used with [Plaintiff's] game and products.").

The Opposing Defendants fair no better on nominative fair use. The Seventh Circuit has not formally endorsed the doctrine of nominative fair use. *KTM*, 2025 WL 965130 at \*2. But assuming that the defense exists in the Seventh Circuit, to prevail on it, the Opposing Defendants "must show that: 1) the product in question is not readily identifiable without use of the trademark; 2) only so much of the mark is used as reasonably necessary to identify the product; and 3) the user of the mark did nothing that would suggest sponsorship by the trademark holder." *Slep-Tone*, 41 F. Supp. 3d at 717 (cleaned up). At a minimum, the Opposing Defendants fail prong two: they provide no evidence indicating why the MusicMate and Zippercase Products need to incorporate the Bose Trademarks as nouns in their product listing titles—the exact location where source-identifying information is generally found. Indeed, if the Opposing Defendants wish to reference their products' compatibility with certain Bose Products, they could use the Bose Trademark as adjectives or disclose that information in the "Compatible Devices" section of their products' description. [51] at 5–6; [51-1] ¶ 7. The Opposing Defendants offer no evidence for why it is "reasonably necessary" for the Bose Trademarks to appear as nouns their product listing titles to "identify the product." *Slep-Tone*, 41 F. Supp. 3d at 717. Without such evidence, the

12

Opposing Defendants have failed to demonstrate their likelihood of success on their nominative fair use defense.

In sum, Bose has demonstrated a likelihood of success on the merits of its trademark infringement claim, and the Opposing Defendants have failed to demonstrate likelihood of success on the merits of their affirmative fair use defenses.

### B. Irreparable Harm

Bose has also sufficiently demonstrated that it would suffer irreparable harm without a preliminary injunction. Where, as with here, a plaintiff moves for a preliminary injunction based on a claim for trademark infringement under the Lanham Act, the plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding . . . of likelihood of success on the merits." 15 U.S.C. § 1116(a); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002) (there is a "presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law."). This is because the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir.2001) (citation omitted).

As Bose has demonstrated a likelihood of success on the merits of its trademark infringement claim, it is entitled to a presumption of irreparable harm. The Opposing Defendants offer no meaningful rebuttal, arguing only that Bose makes conclusory

13

allegations of irreparable harm and repeating their position that Bose is unlikely to prevail on the merits. [28] at 6; [29] at 5–6. Neither are sufficient to defeat Bose's presumption. And although Zippercase does present evidence that its challenged Amazon product listings have since been replaced, [29-5], the ease with which Zippercase could revert to its prior product listings provides a reasonable basis to conclude that its infringement may resume. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 762 (7th Cir. 2012) ("cessation of an unlawful practice doesn't exonerate a defendant, since unless enjoined he might resume infringing.").

Accordingly, Bose has adequately demonstrated irreparable harm.

### C. Balance of Harms

The balance of harms also supports entry of a preliminary injunction. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Nirvana, L.L.C. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 21-CV-01983, 2022 WL 22886568, at *2 (N.D. Ill. Mar. 1, 2022) (citing *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D. D.C. 1994)). This is because a defendant "who adopts the mark of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby derived." *Id.* (citing *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)).

The Opposing Defendants maintain that the harm they would suffer outweighs the harm to Bose because if their e-commerce storefronts were frozen or removed, they would incur massive financial losses and potentially lose their businesses. [28]

at 6–7; [29] at 6. However, as Bose points out, Bose does not seek to remove the Opposing Defendants' online storefronts. [51] at 8. Instead, it seeks only to remove infringing listings on those storefronts. Other non-infringing products on the storefronts will remain active. The Court, therefore, assigns this alleged harm little to no weight.

The Opposing Defendants also argue they will be significantly prejudiced by Bose's proposed asset freeze, as it seeks to restrain all their funds, not just those tied to the narrow subset of allegedly infringing products. [28] at 6–7; [29] at 6. The Court too shares these concerns. Given that the basis for Bose's asset restraint request is disgorgement of profits from the MusicMate and Zippercase Products, [13] at 12, Bose is only entitled to a restrain on assets that derive from those products. Assets derived from sales of lawful, non-infringing products should not be restrained. The Court, however, can remedy this issue by tailoring the preliminary injunction order to only those assets derived from the MusicMate and Zippercase Products. As such, the Court likewise assigns this alleged harm little to no weight.

In sum, while the Opposing Defendants identify certain harms that would befall them if a preliminary injunction was issued, those harms are not, individually or collectively, sufficient enough to outweigh the harm that Bose would suffer absent a preliminary injunction.

### D. Public Interest

Lastly, the Court finds that a preliminary injunction here would serve the public interest. Bose has shown that there is a likelihood of confusion from the Opposing

15

Defendants' use of the Bose Trademarks, and the Court thus finds that the public interest would be served by an injunction to prevent such confusion. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) (finding that "the public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion."). The Opposing Defendants' argument to the contrary is effectively a repeat of their merits defense: that injunctive relief would deprive them of the ability to communicate that the MusicMate and Zippercase Products are compatible with certain Bose Products. [28] at 7; [29] at 7. Putting aside that this is more of a private harm borne by the Opposing Defendants than an effect on the public interest, the argument is predicated on a fair use defense that, for the reasons explained, the Opposing Defendants have not established would succeed.

## IV.    Conclusion

For the stated reasons, Bose's motion for a preliminary injunction [24] is granted with respect to Defendants MusicMate2015 and Zippercase. By April 29, 2026, Defendants MusicMate2015 and Zippercase shall respectively report to Plaintiff the amount of assets that derive from sales of the MusicMate and Zippercase Products. By May 1, 2026, Plaintiff shall send a revised preliminary injunction order to the Court with language restraining only those assets. Given that an injunction will be entered against Defendants MusicMate2015 and Zippercase, Plaintiff's motion for clarification [67] is denied as moot. By May 8, 2026, Plaintiff and Defendants MusicMate2015 and Zippercase shall file a status report informing the Court whether

16

the issuance of this order moots any issues raised in Defendants MusicMate2015 and

Zippercase's pending motion to dismiss [52].

E N T E R:

Dated: April 24, 2026

MARY M. ROWLAND
United States District Judge

17